UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| William Henry McCance, | ) |
| Susan Marie LeMoine, | ) |
| Trust Advisory Group, Ltd., | ) |
| AGES Financial Services, Ltd | )   Civ. A. No. _____ |
| (f/k/a Advisory Group Equity Services, Ltd.) | ) |
| | ) |
| PETITIONERS | ) |
| v. | ) |
| | ) |
| Richard Henri Kreger, | ) |
| Bruce Charles Ryan, and | ) |
| RHK Capital, LLC | ) |
| | ) |
| RESPONDENTS. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PETITION TO VACATE ARBITRATION AWARD**

Warren D. Hutchison, BBO #246150
Kirsten Patzer, BBO # 668564*
Freeman Mathis & Gary, LLP
60 State Street, Suite 600
Boston, Massachusetts 02109
Telephone: 617.963.5983
neil.hartzell@fmglaw.com
kirsten.patzer@fmglaw.com

* Admission Pending

1

## I.  Introduction

Petitioners, William Henry McCance ("McCance"), Susan Marie LeMoine, Trust Advisory Group, Ltd. ("TAG"), and AGES Financial Services, Ltd. ("AGES") (collectively, "Petitioners") move to vacate an arbitration award entered in the arbitration captioned *Richard Henri Kreger, Bruce Charles Ryan, and RHK Capital, LLC v. William Henry McCance, et al.* FINRA Dispute Resolution Case No. 21-00816, dated January 30, 2023 (the "Arbitration Award"). This case cries out for vacatur pursuant to the Federal Arbitration Act ("FAA") § 10(a)(4) because the arbitrators exceeded their powers by awarding damages in connection with the alleged actions of non-FINRA member, TAG.

## II.  Preliminary Statement of Facts

Richard Henry Kreger ("Kreger") and Bruce Charles Ryan ("Ryan") were registered representatives affiliated with AGES. On or about November 30, 2020, McCance, as president of AGES, provided both Kreger and Ryan with notice he was terminating the "Super OSJ" relationship they had with the firm. In this notice McCance explained they (Kreger and Ryan) could either 1) move to a new broker dealer of their choosing; or 2) remain as a Registered Representative of AGES and Investment Advisory Representatives of TAG.  On December 3, 2020 Kreger resigned from AGES and TAG. Ryan resigned on or around February 1, 2021.

On January 25, 2021 Ryan sent McCance a letter demanding McCance's assistance in transferring registered representatives and their respective clients to their new broker dealer, Noble Capital Markets, Inc. ("Noble").  McCance advised Kreger and Ryan that they, and any registered representative that wished to, could "leave unimpeded."

On March 26, 2021 Kreger, Ryan, and RHK Capital, LLC (collectively "RHK") filed a Motion for Temporary Restraining Order in the United States District Court in the District of Connecticut requesting the Court order the Defendants in that action to, amongst other things, "facilitate the bulk transfer of relationships and client accounts from AGES and TAG to Noble…" *See Aff. Patzer, Ex. D.* While that motion was pending, RHK filed an Amended Statement of Claim with FINRA alleging 1) breach of contract; 2) tortious interference with business relationship; 3) fraud in the sale of securities to Kreger; 4) violation of various securities laws in connection with Kreger; and 5) breach of fiduciary duty as to Kreger. *See Aff. Patzer, Ex. B*

The Court denied RHK's Motion on May 6, 2021.  AGES, McCance, and LeMoine filed their Statement of Answer in the FINRA arbitration on June 17, 2021 in which they argued 1) the contract RHK claims was breached was not valid; 2) they were prohibited from facilitating a "bulk transfer" of accounts under FINRA rules; 3) the claims regarding Kreger's purchase of shares in TGI Group, Inc. (the parent company of AGES and TAG) were not properly before the FINRA arbitration forum; and 4) TAG would "decline to participate in the FINRA Dispute Resolution arbitration process" as they are a "Registered Investment Advisor with the SEC and is not a FINRA member." *See Aff. Patzer, Ex. C. p. 3.*

TAG did not execute or file a Submission Agreement with FINRA[1]. FINRA confirmed this in correspondence to the parties on June 21, 2021 stating, "The arbitration panel will only have the power to render an enforceable award against Respondent Trust Advisory Group LTD if Respondent Trust Advisor Group LTD agrees to submit voluntarily to FINRA's jurisdiction." *See Aff. Patzer, Ex. E.*

---

[1] Petitioners note that none of the Arbitration Respondents executed the submission agreements until after the proceedings had completed .

On June 22, 2021 RHK, through counsel, erroneously asserted to FINRA there was an agreement to arbitrate between TAG and the parties, despite there not being any such agreement. *See Aff. Patzer, Ex. F.* TAG asserted its objections and informed FINRA they could not be forced to submit to FINRA arbitration. *See Aff. Patzer, Ex. G.* FINRA responded on June 28, 2021, essentially referring the issue to the arbitrators.

TAG and the Arbitration Respondents filed a partial motion to dismiss on September 30, 2021 where they again informed the Arbitration Panel that TAG was not a FINRA "member or associated person." *See Aff. Patzer, Ex. H, p. 4.* After hearing oral arguments on the motion in January 2022, where counsel for TAG, AGES, McCance, and LeMoine again explained that TAG was not subject to their jurisdiction, the Panel issued a non-unanimous Order stating "the Motion to Dismiss is denied without prejudice to renewal at the hearing."

Throughout the hearing, starting with opening arguments, the Panel was told TAG was not a proper party to these proceedings:

> Ms. Patzer: Trust Advisory Group is also an improper party to [this] claim. They are not a broker dealer; they are…a registered investment adviser firm. They are governed by the SEC, not FINRA."

*See, Aff. Patzer, Ex N(1), p. 50:22-25, 51:1-4.*

After 14 days of hearing, the Panel requested the parties submit their requests for damages, fees, and costs. RHK filed their "Summary of Damages" on or around January 3, 2023 requesting over $11 million in damages. They specifically delineated $102,000 (which would be the *exact* amount awarded by the arbitrators) as "Amounts wrongfully withheld in connection with SEC investigation, prompted by Respondents' language on the ADV Form filed by Trust Advisory Group, LTD." *See Aff. Patzer, Ex. I.*

4

On January 30, 2023 the panel issued the Award granting RHK $102,000. In that same award the panel notes, "TAG did not file a Statement of Answer or sign the Submission Agreement." *See Aff. Patzer, Ex. A.* By awarding RHK the $102,000 directly attributable to the actions of TAG, the arbitrators plainly exceeded their authority and the Award should be vacated accordingly.

### III.     Factual Background

A. <u>Kreger and Ryan Join AGES</u>

The seeds for the underlying litigation in this matter were planted in the summer of 2016 when McCance, as president of TAG and AGES, entered into negotiations with Respondents and David Harris, the sole shareholder of broker-dealer and investment advisory firm, Source Capital Group, Inc. ("Source"), to acquire Source. McCance, TAG, AGES, Source, and Harris memorialized these negotiations in a Business Transfer Agreement ("BTA") signed by both Mr. McCance and Mr. Harris on or around November 30, 2016.

Attached as an Exhibit to the BTA was an OSJ Manager Agreement ("OSJ Agreement") which outlined AGES, TAG, and Harris' obligations, responsibilities, and compensation. Neither Kreger nor Ryan were signatories to either the BTA or the OSJ Agreement.

In anticipation of this acquisition, and as contemplated in the BTA and required by FINRA Rule 1017, AGES filed a Continuing Member Application ("CMA") with FINRA on or around November 30, 2016. FINRA Rule 1017 governs the application for approval when a broker-dealer has a change in ownership, control, or business operations. The transaction between AGES and Source would involve both a change in ownership and business operations.

On February 1, 2017, an arbitration panel in FINRA Arbitration No. 16-00147, stylized as *William Lashlee, Keith McCrea, Joyce McCrea, Justin McCrea, The 2010 McCrea Family*

5

*Revocable Trust v. Source Capital Group*, found Source liable and awarded Claimants damages totaling $1,250,000. This award resulted in Source violating their net capital obligations pursuant to section 15(c)(3) under the Securities Exchange Act of 1934.

Upon violating the Net Capital Rule, Source had to "suspend all business operations" pursuant to FINRA Rule 4110(b)(1). This did not just effect Source: every financial advisor registered with Source would similarly be forced to suspend their brokerage business. By violating the Net Capital Rule, Source essentially set their advisors to drift in FINRA purgatory.

When the Net Capital Rule was violated the BTA was also rendered invalid. AGES could no longer acquire Source as originally contemplated. McCance and AGES offered the financial advisors still registered with Source a life preserver: they would assist every advisor in registering with AGES and transferring their client accounts. However, because FINRA had not yet approved the CMA, the advisors would have to come over piecemeal, and not in a bulk transfer.

On February 3, 2017 Kreger relinquished his FINRA registration with Source and affiliated with AGES on February 6, 2017. In connection with his registration with AGES Kreger executed a Registered Representative Agreement. On February 6, 2017 Ryan relinquished his FINRA registration with Source and affiliated with AGES on or around February 7, 2017. He also executed a Registered Representative Agreement.

The Registered Representative Agreement contained a provision where Kreger and Ryan that TAG and AGES reserved the "right to withhold commissions or fees or demand repayment of the commission or fees or any unpaid balance that shall occur. [Kreger and Ryan] agree that any funds held or monies due or which may become due, to [Kreger or Ryan] by [TAG or AGES] may be offset or otherwise withheld from payment to [Kreger or Ryan] to satisfy any repayment obligation of [Kreger or Ryan] created herein." *See Aff. Patzer, Ex. J, p. 7.*

The Registered Representative Agreement does not have an arbitration clause. Instead, it states, "In the event of any lawsuit between the RR and the Company as a result of any transaction whatsoever, it is expressly agreed that the same shall be instituted in Middlesex County, Massachusetts." *Id. at p. 8.*

B. The SEC Investigation

When Kreger and Ryan affiliated with AGES they became OSJ Managers over the former Source financial advisors. As OSJ Managers they received overrides on the transactions of those advisors, a variety of other fees/costs, and also received revenue on the money market/cash sweep funds for accounts managed through TAG.

On December 14, 2020 the SEC sent TAG and AGES an initial inquiry into the money market revenue sharing investigation. *See Aff. Patzer, Ex. K.* TAG was not being singled out by the SEC. This was part of an industry wide enforcement where the SEC sanctioned and fined dozens of investment advisor firms for the same practice. On June 7, 2022, after the initial three days of hearing in this matter, the SEC issued an Order to TAG in which TAG was required to disgorge $148,255.15 of the money market revenue shares they (and by proxy, RHK) received, and pay a penalty of $50,000. *See Aff. Patzer, Ex. L.*

During the examination of Ryan on August 18 and 19, 2022, he acknowledged having known about the SEC investigation and why they funds were being withheld:

> Q: Did you actually received your overrides from November 30th to February 1?
>
> Ryan: I think I got some partial payments, with $102,000 withheld for his SEC investigation that he said was related to my money market payments.

*See Aff. Patzer, Ex. N(5), August 18, 2022 Hearing Transcript, p. 38:9-15.*

> Q: Have you ever gotten any – any information about that investigation, other than what Mr. McCance told you?

7

> Ryan:      No.
> Q:         About –
>
> Ryan:      Well, why I questioned him about it, he sent me a notice that he had gotten from the SEC. That was in December…It was very early on when I – when they started withholding money. I said, 'Why are you withholding the money?" And he sent me the notice…

*See Aff. Patzer, Ex. N(6), August 19, 2022 Hearing Transcript, p. 59:9-22*

In his testimony on April 6, 2022 McCance detailed the SEC investigation and why the $102,000 was withheld:

> McCance:   The Monies that were being withheld were being held pursuant to the registered rep agreement, which states the idea that the actions taken by a regulator or a client against the firm, which costs the firm money, the firm is able to recapture that; meaning, the two indviduals who were leaving the girm, we did not believe would be able to recapture that without go to court.
>
> So, we escalated [sic] to $102,000, pursuant to the Securities and Exchange Commission investigation in reference to the money market fees; that $102,00 was…paid to RHK as money market fee revenue.
>
> \*\*\*
>
> With that, we told both Mr. Kreger and Mr. Ryan exactly what was going on, and when the SEC came back and said, "you are free to continue collecting money market revenues and we have no action against you," we would have returned the $102,000. Since then, we have verbally entered into an agreement with the Securities and Exchange Commission to pay the funds back to clients, and would be entering into an agreement as soon as its drafted.

*See Aff. Patzer, Ex. N(1) April 6, 2022 Hearing Transcript, p. 177:14-25, 178:1-5, 14-25.*

Since the Award, TAG was issued a 1098-F form from the SEC detailing the fine and restitution amount paid. *See Aff. Patzer, Ex. M.*

### IV.    Argument

A.   <u>The Arbitrators Exceeded Their Powers By Binding Non-Party TAG</u>

8

While the FAA "embodies a national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), it does provide a narrow set of statutory grounds for a federal court to vacate an award where, as here, vacatur is warranted. The FAA provides that vacatur is appropriate "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted could not be made." 9 U.S.C. §10(a).

Under FINRA Rule 13200, disputes must be arbitrated if the dispute arises out of the business activities of a member or an associated person and is between or among:

- Members;
- Members and Associated Persons; or
- Associated Persons."

TAG is neither a Member or Associated Person, and, unlike the FINRA Code of Arbitration Procedure for Customer Disputes, there is not a provision to even allow a non-FINRA member to participate in FINRA Arbitration Process – even if there was a contract in which TAG agreed to the FINRA Arbitration forum. [2]

In 2010 the Supreme Court vacated an arbitration award which found an arbitration class action viable although there was no provision for class action arbitration in the arbitration agreement. *Stolt-Nielsen SA v. Animalfeeds International, Corp*., 559 U.S. 662 (2010). The Court held that the arbitrators in that matter, "knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Id*. at 1768 n.3.

---

[2] FINRA Rule 12201, which only governs Customer disputes, allows for non-Members to participate via "Elective Arbitration."

A variety of Courts, including this one, have held that "an arbitration award may be modified or vacated if it attempts to bind a nonparty." *Lumber Liquidators, Inc. v. Sullivan,* 2011 WL 5884252 at *3 (D. Mass 2011).

Here, in its ***own award*** the Arbitrators acknowledged that TAG was not a party to the arbitration as they did not file a Statement of Answer or sign a Submission Agreement. They clearly knew and understood TAG was not a part of the arbitration proceedings. And yet they still awarded damages to RHK for an amount that can only be attributed to TAG.

The Panel clearly exceeded their own stated authority and the authority granted to them in the FINRA Code of Arbitration Procedure for Industry Disputes.

## V.  Conclusion

For the reasons set forth above, Petitioners respectfully request this Court vacate the Arbitration Award in accordance with 9 U.S.C. §10(a)(4) of the FAA as it exceeded the Arbitrators power.

Dated: May 1, 2023

Respectfully Submitted,

FREEMAN, MATHIS, & GARY, LLP


By:   */s/ Warren D. Hutchison*
      Warren D. Hutchison, BBO #246150
      Kirsten Patzer, BBO # 668564*
      *Counsel for Petitioners*
      60 State Street, Suite 600
      Boston, Massachusetts 02109
      Telephone: 617.963.5983
      warren.hutchison@fmglaw.com
      kirsten.patzer@fmglaw.com

      * Admission Pending