UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WILLIAM HENRY MCCANCE, SUSAN MARIE LEMOINE, TRUST ADVISORY GROUP, LTD., and AGES FINANCIAL SERVICES, LTD., | ) ) ) ) ) ) | |
| Petitioners, | ) ) | No. 1:23-cv-10955-JEK |
| v. | ) ) ) | |
| RICHARD HENRI KREGER, BRUCE CHARLES RYAN, and RHK CAPITAL, LLC, | ) ) ) ) ) | |
| Respondents. | ) ) | |

**MEMORANDUM AND ORDER ON PETITION TO VACATE ARBITRATION AWARD AND CROSS-MOTION TO CONFIRM ARBITRATION AWARD**

**KOBICK, J.**

This case involves a business dispute that was arbitrated before the Financial Industry Regulatory Authority ("FINRA"). The FINRA arbitration panel determined that the petitioners in this action—William Henry McCance, Susan Marie LeMoine, Trust Advisory Group, Ltd. ("TAG"), and AGES Financial Services, Ltd. ("AGES")—are jointly and severally liable to the respondents—Richard Henri Kreger, Bruce Charles Ryan, and RHK Capital, LLC—for $102,000 in compensatory damages. The petitioners then filed in this Court a petition to vacate the arbitration award pursuant to Section 10 of the Federal Arbitration Act ("FAA"), and the respondents filed a cross-motion to confirm the arbitration award pursuant to Section 9 of the FAA. After consideration of the parties' arguments, the Court will deny the petition to vacate and will confirm the arbitration award, because the petitioners have not established that the arbitration panel

exceeded the scope of its powers in holding them jointly and severally liable for $102,000 in damages.

## BACKGROUND

Petitioner AGES is an independent broker dealer and a member of FINRA. ECF 1, ¶ 4.[1] Petitioner TAG is an investment advisory firm registered with the Securities and Exchange Commission ("SEC") pursuant to the Investment Advisors Act of 1940. *Id.* ¶ 3. AGES and TAG are owned by the same parent company, TAG Group, Inc. ECF 24. The corporations are registered in Delaware and have their principal places of business in Woburn, Massachusetts. ECF 1, ¶¶ 3-4; ECF 16-6, at 51. Petitioners McCance and LeMoine are principals of TAG and AGES and residents of Massachusetts. ECF 1, ¶¶ 1-2; ECF 16-2, at 1.

Before their resignations on December 3, 2020 and February 1, 2021, respectively, respondents Kreger and Ryan were registered representatives of AGES and investment advisory representatives of TAG. ECF 2, at 2. Respondent RHK Capital is the financial services business of Kreger and Ryan. ECF 1, ¶ 7. The respondents are all residents of Connecticut. *Id.* ¶¶ 5-7; ECF 23.

This action arises from a dispute over the transfer of customer accounts and funds from the petitioners to the respondents, following the dissolution of the parties' business relationship. That relationship began during the summer of 2016 when McCance, as president of TAG and AGES, began negotiating an agreement with Kreger, Ryan, and an individual named David Harris. ECF 2, at 5. Under that agreement, TAG and AGES would acquire Source Capital Group, Inc., a broker

---

[1] "FINRA is a self-regulatory organization that has 'the authority to exercise comprehensive oversight over all securities firms that do business with the public.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 737 (9th Cir. 2014) (quoting *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011)).

dealer and investment advisory firm. *Id.* At the time, Harris was the sole shareholder of Source Capital, and Kreger and Ryan were financial advisors registered with Source Capital. *Id.* at 5-6.

On November 30, 2016, Harris and Source Capital entered into a Business Transfer Agreement with TAG and AGES, pursuant to which they agreed to transfer the business of Source Capital to TAG and AGES. ECF 2, at 5; ECF 16-6, at 31 ("Business Transfer Agreement," at 5). In exchange, TAG and AGES agreed to establish a Super Office of Supervisory Jurisdiction ("OSJ") that would be co-managed by Harris, Kreger, and Ryan. ECF 2, at 5; ECF 16-6, at 32, 42-43 (Business Transfer Agreement §§ 2.1, 6.3). Attached to the Business Transfer Agreement as Exhibit B was an OSJ Manager Agreement between Harris, TAG, and AGES, which set forth, among other terms and conditions, the compensation and responsibilities of Harris as an OSJ Manager. ECF 16-6, at 51-63 ("OSJ Manager Agreement"). Although Kreger and Ryan were not signatories to the Business Transfer Agreement or the OSJ Manager Agreement, both agreements provided that Kreger and Ryan would be appointed with Harris as Co-Managers of the Super OSJ. *Id.* at 42, 49 (Business Transfer Agreement, § 6.3 and at 23), 51 (OSJ Manager Agreement, at 25, 36). The OSJ Manager Agreement contained an arbitration clause, which provided that "[a]ny claim or controversy arising out of or relating to [the OSJ Manager Agreement], or the interpretation thereof, or to [Harris'] termination of service hereunder shall be submitted to arbitration under the then prevailing Rules of [FINRA]." *Id.* at 60 (OSJ Manager Agreement § 22).

On February 3, 2017, Kreger and Ryan each signed Registered Representative Agreements with TAG and AGES. ECF 16-10, at 1-8 (Ryan Registered Representative Agreement), 9-16 (Kreger Registered Representative Agreement). Under these agreements, Kreger and Ryan would serve as FINRA registered representatives and licensed investment advisor representatives of TAG and AGES. *Id.* at 2, 10. The Registered Representative Agreements were "made between [Kreger

3

or Ryan]" and "Trust Advisory Group, Ltd./Advisory Group Equity Services, Ltd." *Id.* at 2, 10. Each agreement contained an arbitration clause, which provided that "[a]ny controversy between [TAG and AGES] and [Kreger or Ryan], arising out of, or relating to [the Registered Representative Agreement] or the breach thereof, shall be settled by arbitration, in accordance with the arbitration rules of [FINRA]." *Id.* at 4, § 1; 12, § 1. The agreements also provided that:

> [TAG and AGES] reserv[e] the right to withhold [from Kreger and/or Ryan] commissions or fees or demand repayment of the commission or fees or any unpaid balance that shall occur. [Kreger and Ryan agree] that any funds held or monies due or which may become due, to [Kreger or Ryan] by [TAG and AGES], may be offset or otherwise withheld from payment to [Kreger and/or Ryan] to satisfy any repayment obligation of [Kreger or Ryan] created herein.

*Id.* at 7, § 26; 15, § 26; *see* ECF 2, at 6.

On November 30, 2020, McCance, as president of AGES, notified Kreger and Ryan that "he was terminating the 'Super OSJ' relationship that [Kreger and Ryan] had with the firm." ECF 2, at 2. McCance told Kreger and Ryan that they could remain registered representatives of AGES and investment advisory representatives of TAG, or they could move to a new broker dealer. *Id.* Kreger and Ryan chose to resign from AGES and TAG on December 3, 2020 and February 1, 2021, respectively, and to register with a new broker dealer, Noble Capital Markets, Inc. *Id.*

On March 26, 2021, Kreger, Ryan, and RHK Capital initiated arbitration proceedings against McCance, LeMoine, AGES, and TAG with FINRA's Dispute Resolution Services in New York, New York. ECF 16-1, at 1. Their First Amended Statement of Claim asserted that McCance, LeMoine, AGES, and TAG breached the OSJ Manager Agreement, tortiously interfered with business relationships, defrauded Kreger, and breached fiduciary and contractual duties by withholding payments owed to Kreger and Ryan. ECF 16-2, at 15-22. Kreger, Ryan, and RHK Capital sought to enjoin the petitioners from interfering with the transfer of customer accounts

4

from AGES and TAG to Noble Capital Markets, and to recover damages and funds allegedly owed to them. ECF 16-1, at 1-3.

McCance, LeMoine, and AGES—all FINRA members—filed a Statement of Answer and participated in the arbitration proceedings. *Id.* at 2-3; ECF 16-3. TAG never filed a Statement of Answer. ECF 16-1, at 2. In the Statement of Answer filed by McCance, LeMoine, and AGES, and in several other instances throughout the proceedings, the petitioners contended that, as a registered investment advisor and non-member of FINRA, TAG was not subject to FINRA's jurisdiction. *See* ECF 16-3, at 3 n.2; ECF 16-5; ECF 16-7. In their view, the arbitration panel could not render an enforceable award against TAG unless TAG voluntarily consented to the panel's jurisdiction by signing a submission agreement. *See* ECF 16-5; ECF 16-7. TAG never signed a submission agreement. ECF 16-1, at 2.

Among the damages the respondents sought were $102,000 for "[a]mounts wrongfully withheld in connection with [an] SEC investigation prompted by [the petitioners'] language on the ADV Form filed by [TAG]." ECF 16-9.[2] During an evidentiary hearing on April 6, 2022, McCance testified that, in connection with the SEC investigation,[3] he had withheld $102,000 from Kreger,

---

[2] The respondents also sought damages in the amounts of $10,030,000 for the petitioners' "violation of paragraph 8 of the OSJ Agreement"; $229,600 for the "[c]ost of securities purchased by [Kreger] based on material misrepresentations minus dividends amounting to $120,000"; $163,437 in interest; $586,327.22 for attorney's fees and costs; and $32,999.91 for expert witness fees. ECF 16-9 (emphasis omitted).

[3] On December 14, 2020, the SEC notified TAG and AGES that it was investigating TAG to determine if TAG had violated federal securities laws in connection with certain money market and cash sweep revenue sharing practices. ECF 2, at 7; ECF 16-11. On June 7, 2022, the SEC issued an order instituting administrative cease-and-desist proceedings against TAG pursuant to Sections 203(e) and 203(k) of the Investment Advisers Act of 1940. ECF 16-12, *In re Trust Advisory Grp., Ltd.*, Advisers Act Release No. 6046 (June 7, 2022). The SEC found that, from December 2015 to March 2022, TAG's "affiliated broker dealer," AGES, "received revenue sharing payments from its clearing broker . . . for [TAG's] clients' assets in cash sweep products, including money market mutual funds and FDIC-insured bank deposit accounts," and that TAG "failed to provide full and fair disclosure of this revenue sharing and the resulting conflicts of

5

Ryan, and RHK Capital "pursuant to the registered rep[resentative] agreement, which states the idea that the actions taken by a regulator or a client against the firm, which costs the firm money, the firm is able to recapture that." ECF 16-14, at 177. The Registered Representative Agreements to which McCance referred were those entered into by TAG, AGES, Ryan, and Kreger in February 2017. *See* ECF 16-10.

Following further evidentiary hearings held in New York and by video conference, the arbitration panel issued an award on January 30, 2023. ECF 16-1. The panel concluded, "in full and final resolution of the issues submitted for determination," that the petitioners were jointly and severally liable to the respondents for $102,000 in compensatory damages plus interest. *Id.* at 1-3. The panel denied "any and all" other claims for relief. *Id.* at 3.

Invoking this Court's diversity jurisdiction, the petitioners filed this petition to vacate the arbitration award pursuant to Section 10 of the FAA, 9 U.S.C. § 10. ECF 1. The petition contends that the arbitrators "exceeded their powers, or so imperfectly executed them that mutual, final, and definite award upon the subject matter submitted was not made." *Id.* ¶¶ 30-32. In the petitioners' view, the $102,000 awarded was an amount attributable only to the actions of TAG, not to the actions of AGES, McCance, and LeMoine. Since TAG did not sign a submission agreement or otherwise voluntarily submit to FINRA's jurisdiction, the petitioners assert, the arbitrators exceeded their powers by awarding damages which, in the petitioners' view, arose solely from the actions of TAG. The respondents opposed the petition to vacate and cross-moved to confirm the

---

interest" to its clients. *Id.* ¶ 1. The SEC also found that TAG "failed to adopt and implement written compliance policies and procedures reasonably designed to prevent violations of the Advisers Act and the rules thereunder related to its disclosure of cash sweep revenue sharing and the associated conflicts of interest." *Id.* ¶ 2. The SEC concluded that TAG "willfully violated Sections 206(2) and 206(4) of the Advisers Act and Rule 206(4)-7 thereunder," *id.* ¶ 3, and it ordered TAG to pay disgorgement, prejudgment interest, and a civil monetary penalty totaling $214,460.07, *id.* at 6, ¶ C.

6

arbitration award. ECF 9. According to the respondents, the petition should be dismissed for improper venue or for failure to timely effectuate service. In the alternative, the respondents argue that because the petitioners have not demonstrated that vacatur of the arbitration award is warranted, the Court should enter an order confirming the award.

## DISCUSSION

**I.     Venue.**

The respondents contend that the petition to vacate should be dismissed for improper venue, or alternatively, transferred to the Southern District of New York or the District of Connecticut—the districts where, respectively, the award was issued and the respondents reside. Section 10 of the FAA provides that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10(a). But because this venue provision is "permissive," not "restrictive," the FAA allows "a motion to confirm, vacate, or modify an arbitration award to be brought" in either the district "where the award was made *or* in any district proper under the general venue statute." *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 195 (2000) (emphasis added).

Under the general venue statute, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). To determine whether a district is one in which a substantial part of the events occurred, a court "look[s] 'not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim.'" *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)); *see also JLB LLC v. Egger*, 462 F. Supp. 3d 68,

82 (D. Mass. 2020). The court "do[es] not focus on the actions of one party"; instead, it "takes a 'holistic view of the acts underlying a claim.'" *Astro-Med*, 591 F.3d at 12 (quoting *Uffner*, 244 F.3d at 43 n.6). And because venue may lie in more than one district, the court is "not required to determine the best venue, merely a proper venue." *Id.* With respect to "enforcement of arbitration awards, the 'events giving rise to the claim' are those events giving rise to the claim resolved in the arbitration, not just the arbitration proceeding itself." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (quoting *Cortez*, 529 U.S. at 198).

The petitioners contend that venue is proper in District of Massachusetts because they reside in this district and some of the arbitration hearings took place in Boston. The respondents acknowledge that the petitioners participated in arbitration hearing sessions remotely from Boston, but they argue that remote participation alone is insufficient to establish venue, where the arbitration hearings took place in person at FINRA's New York office. The Court is not limited, however, to considering only the location of the arbitration proceedings themselves. *See D.H. Blair*, 462 F.3d at 106. Here, venue is proper in this District because the "events giving rise to the claim resolved in the arbitration" took place, at least in part, in Massachusetts. *Id.* AGES and TAG are headquartered in Massachusetts, and McCance and LeMoine are Massachusetts residents. Kreger and Ryan were registered representatives of AGES and investment advisor representatives of TAG. The crux of the parties' arbitrated dispute regarded the transfer of customer accounts and funds following the termination of the parties' business relationship. Since the corporate petitioners were based in Massachusetts during the parties' business relationship, and Kreger and Ryan worked for those Massachusetts-based corporations during that relationship, a substantial part of the events giving rise to the claim occurred in the District of Massachusetts. Venue is therefore proper under 28 U.S.C. § 1391(b)(2).

## II.     Petition to Vacate.

The respondents next contend that the petition to vacate should be dismissed because it was not timely and properly served, or because the petitioners have not demonstrated that vacatur is warranted. Bypassing the former contention, the Court will deny the petition because the petitioners have failed to establish that the arbitration panel exceeded the scope of its powers.

Judicial review of an arbitrator's ruling "is extremely narrow and exceedingly deferential, and is indeed among the narrowest known in the law." *Raymond James Fin. Servs., Inc. v. Fenyk*, 780 F.3d 59, 63 (1st Cir. 2015) (citations and quotation marks omitted). The provisions of the FAA governing confirmation, vacatur, and modification of an arbitration award, 9 U.S.C. §§ 9-11, "substantiat[e] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). The petitioners here contend, pursuant to Section 10(a)(4) of the FAA, that the FINRA arbitration panel exceeded its authority in awarding the respondents $102,000 in damages. Under that provision, a federal court may vacate an arbitral award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

"A party seeking relief under [Section 10(a)(4)] bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). "It is not enough for petitioners to show that the panel committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). "'It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable.'" *Id.* (quoting *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509, (2001)). Because courts "'do not sit to hear claims of factual or legal error by

9

an arbitrator as an appellate court does in reviewing decisions of lower courts,'" a court may not reconsider the merits of an arbitration award, even if an error in that award "'is painfully clear.'" *Hoolahan v. IBC Adv. Alloys Corp.*, 947 F.3d 101, 116 (1st Cir. 2020) (quoting *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8 (1st Cir. 1990)). As "'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not to suffice to overturn his decision.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

The petitioners contend that the FINRA arbitration panel exceeded its authority by issuing an award that binds TAG, an entity that was never a party to the arbitration proceedings. In the petitioners' view, because TAG is not a FINRA member or associated person, the arbitration panel could not have had jurisdiction over TAG absent TAG's voluntary submission to participate in the proceedings.[4] And, they point out, TAG did not voluntarily submit to participate in the proceedings because it did not file a Statement of Answer or sign a submission agreement. Relying on the principle that an arbitrator can exceed its powers by attempting to bind a non-party, the petitioners argue that the panel exceeded its powers by issuing an award that bound TAG. *See, e.g.*, *NCR Corp. v. SAC-Co., Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995) (the "arbitrator exceeded his authority

---

[4] Under the FINRA Code of Arbitration Procedure for Industry Disputes, a "member" is "any broker or dealer admitted to membership in FINRA" and "any broker or dealer admitted to membership in a self-regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and to be treated as members of FINRA for purposes of the Code." FINRA Rule 13100(q). An "associated person" is "(1) [a] natural person who is registered or has applied for registration under the Rules of FINRA; or (2) [a] sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA." FINRA Rule 13100(b), (u). The respondents do not dispute that TAG is not a FINRA member or associated person.

by . . . determining the rights of individuals who were not parties in the arbitration"); *Lumber Liquidators, Inc. v. Sullivan*, No. 10-cv-11890-NMG, 2011 WL 5884252, at *3 (D. Mass. Sept. 27, 2011) ("[A]n arbitration award may be modified or vacated if it attempts to bind a nonparty.").

For several reasons, the petitioners' reliance on the non-party principle is misplaced. First, contrary to the petitioners' assertion, the record indicates that TAG did agree to submit to FINRA's jurisdiction. TAG entered into three contracts in which it agreed to arbitrate disputes arising out of those agreements under FINRA's rules. The OSJ Manager Agreement between TAG, AGES, and Harris contained a clause providing that "[a]ny claim or controversy arising out of or relating to [the OSJ Manager Agreement], or the interpretation thereof, . . . shall be submitted to arbitration under the then prevailing Rules of [FINRA]." ECF 16-6, at 60 (OSJ Manager Agreement § 22). The first paragraphs of the two Registered Representative Agreements, entered into by TAG and AGES with Ryan and Kreger, likewise contained clauses providing that "[a]ny controversy between [TAG and AGES] and [Kreger or Ryan], arising out of, or relating to [the Registered Representative Agreement] or breach thereof, shall be settled by arbitration, in accordance with the arbitration rules of [FINRA]." ECF 16-10, at 4, 12. And the underlying FINRA arbitration concerned the petitioners' alleged violation of duties owed under each of these contracts. *See* ECF 16-2, at 15-18, 22 (respondents' First Amended Statement of Claim, asserting that the petitioners breached the OSJ Manager Agreement and violated fiduciary duties by withholding payments owed to Kreger and Ryan); ECF 16-14, at 177 (McCance testifying that he withheld $102,000 from Kreger and Ryan "pursuant to the registered rep[resentative] agreement[s]").

Notwithstanding TAG's contractual commitment to arbitrate disputes arising out of the OSJ Manager Agreement and Registered Representative Agreements before FINRA, the petitioners contend that FINRA's rules prohibit it from exercising jurisdiction over non-members,

11

like TAG, absent their consent to participate in FINRA arbitration. They point, in particular, to FINRA Rule 13200, which provides that "a dispute must be arbitrated under the [FINRA Code of Arbitration Procedure for Industry Disputes] if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." FINRA Rule 13200. As the petitioners see it, because FINRA Rule 13200 and the FINRA Code do not expressly include non-members in this list, non-members like TAG cannot be subject to FINRA arbitration proceedings absent their voluntary submission, and the FINRA panel could not have entered an enforceable award against TAG.

      This argument is unpersuasive. The petitioners cite no support for interpreting FINRA Rule 13200 to prohibit FINRA from exercising jurisdiction over non-members absent their voluntary submission to a FINRA arbitration. Nor do the petitioners, whose briefs contain less than two pages of argument on this issue, point to anything in the plain text of Rule 13200 or the broader context of the FINRA Rules that supports their interpretation. By its terms, Rule 13200 affirmatively requires FINRA members and associated persons to arbitrate pursuant to the FINRA Code, but it says nothing about prohibiting FINRA from exercising jurisdiction over non-members that have previously contractually agreed to FINRA arbitration but then refused to sign FINRA submission agreements. *See Credit Suisse Sec. (USA) LLC v. Tracy*, 812 F.3d 249, 254 (2d Cir. 2016) (construing Rule 13200 to affirmatively "requir[e] arbitration in a FINRA forum"). And even if the petitioners' interpretation of FINRA Rule 13200 were correct, they have advanced no cogent argument that the Rule would supersede TAG's agreement to submit to the FINRA arbitral forum in the OSJ Manager Agreement and the Registered Representative Agreements.[5] Indeed,

---

[5] The petitioners do not dispute the respondents' interpretation of the arbitration provisions in the OSJ Manager Agreement and the Registered Representative Agreements to require arbitration before FINRA.

12

the Second Circuit has held, contrary to the petitioners' argument, that parties can agree in a pre-dispute contract to arbitrate in manner inconsistent with FINRA Rule 13200. *See id.* at 254-56 (holding that a pre-dispute agreement between FINRA members and associated persons to arbitrate in a forum other than FINRA superseded FINRA Rule 13200).

  Second, even assuming that the arbitration panel lacked authority to issue a binding award against TAG, the petitioners have not carried their burden to establish that the panel exceeded its authority as to McCance, LeMoine, and AGES, all of whom were FINRA members or associated persons subject to the panel's jurisdiction, and all of whom were held jointly and severally liable. The petitioners have requested only that the Court vacate the award in its entirety, not as to TAG alone. *See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (in reviewing an arbitration award under the FAA, a court "can confirm and/or vacate the award, either in whole or in part" (quotation marks omitted)). In the petitioners' telling, the $102,000 award must be vacated as to all four petitioners because that sum correlates with activity attributable only to TAG, not to the other petitioners. More specifically, they argue that the amount of the award mirrors the $102,000 that Kreger, Ryan, and RHK Capital sought for "[a]mounts wrongfully withheld in connection with [an] SEC investigation prompted by [the petitioners'] language on the ADV Form filed by [TAG]." ECF 16-9. But the fact that the respondents' request for damages tied $102,000 to a form filed by TAG does not lead inexorably to the conclusion that the arbitration panel viewed those damages as *solely* attributable to TAG. Another petitioner—McCance—testified that he withheld $102,000 from Kreger and Ryan in accordance with the Registered Representative Agreements, to which AGES was a signatory. ECF 16-14, at 177; *see* 16-10, at 7, § 26; 15, § 26 (provision of Registered Representative Agreements authorizing AGES and TAG to withhold commissions and fees from Kreger and Ryan). That

testimony could have supplied a basis for the panel to attribute the $102,000 in damages to the other petitioners. The petitioners have not, accordingly, demonstrated that the arbitration panel exceeded the scope of its authority in holding McCance, LeMoine, and AGES jointly and severally liable for $102,000 in damages. *See Hoolahan*, 947 F.3d at 116 (as "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the court may not overturn its decision (quotation marks omitted)).

Because the petitioners have failed to demonstrate their entitlement to relief under Section 10(a)(4) of the FAA, their petition to vacate the arbitration award must be denied, and the respondents' timely cross-motion to confirm the arbitration award must, correspondingly, be granted. *See* 9 U.S.C. § 9 ("[A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."); *Hall St. Assoc.*, 552 U.S. at 587 (Section 9's "provision for judicial confirmation carries no hint of flexibility.").

## CONCLUSION AND ORDER

For the foregoing reasons, the petition to vacate the arbitration award, ECF 1, is DENIED, and the respondents' cross-motion to confirm the arbitration award, ECF 9, is GRANTED. Judgment will enter for the respondents.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: October 30, 2025